**COMMONWEALTH of Kentucky,**
**Movant,**

v.

**Jerry KEY, Respondent.**

Supreme Court of Kentucky.

March 30, 1982.

Rehearing Denied June 14, 1982.

Steven L. Beshear, Atty. Gen., Stephen L. Frank, Asst. Atty. Gen., Frankfort, for movant.

Jack E. Farley, Public Advocate, Com. of Ky., Frankfort, Pam E. Goldman, Lexington, for respondent.

STERNBERG, Justice.

On March 19, 1980, the Grand Jury of Ohio County, Kentucky, returned an indictment charging the respondent, Jerry Key, with the offense of first-degree robbery (KRS 515.020). The evidence discloses that on January 21, 1980, respondent, his minor wife Linda, and a minor friend by the name of Dennis Alemaine were riding around in an automobile. Jerry was driving and the two minors were riding with him. Jerry stopped the car in front of Wilson's grocery store at a point where it was clearly visible from inside the store. Linda and Dennis went in the store and while Dennis held a gun on and threatened the proprietor, Linda cleaned out the cash register and took Mr. Wilson's wallet from him. She and Dennis then left the store, got in the car, and with Jerry driving the three of them departed for the state of Florida, where they were apprehended several days later.

The charges against Linda and Dennis were disposed of in juvenile court prior to Jerry's trial in the circuit court. Linda was sentenced to imprisonment for six months, and Dennis was sentenced to imprisonment for four months. Jerry was convicted in the circuit court and sentenced to imprisonment for a period of five years.

On June 2, 1980, respondent filed with the trial court a motion for discovery, as follows:

"Comes the Defendant, by counsel, and moves the Court to permit this Defendant to inspect and copy any written or recorded statements made by this Defendant or by any other person that the Commonwealth alleges may have participated in any of these actions with the Defendant; to allow the Defendant to inspect and copy the results or reports of any physical or mental examinations or of any scientific tests or experiments, expecially any determination of the identification of this Defendant made in connection with this case; to allow the Defendant to inspect and copy any books, papers, documents or tangible objects that are in possession of the Commonwealth.

The Defendant further moves the Court to require the Commonwealth to provide any information that may tend to exculpate the Defendant."

The Commonwealth, in response thereto, stated as follows:

"1. Defendant, Jerry Key made no written or recorded statement. The Defendant made an oral statement to Joe Peevy, Sheriff, Madison County, Florida, that he had driven the car in the robbery, that Dennis Alimani and Linda Key had gone into the store in Horse Branch, Kentucky and robbed it and that he had kept a look out on the outside and that after the robbery, the three (3) left Kentucky and went to Florida.

2. The statements of witnesses are not discoverable.

3. There were no physical or mental examinations of the Defendant.

4. The Defendant was identified from photographs by L. A. Wilson, owner of the store.

5. The request to copy any books, papers, documents or tangible objects that are in the possession of the Commonwealth is so vague and indefinite that the Commonwealth cannot respond to it and as no particular information was requested, such information is not discoverable.

6. The Commonwealth is aware of no evidence which would exculpate the Defendant."

At a hearing that same date the trial judge refused to order discovery of statements of the two juveniles prior to their testimony at trial. Most important for this appeal, counsel and the court discussed the disclosure of any exculpatory evidence. The Commonwealth's Attorney recognized the duty to reveal any exculpatory information but contended information in the County Attorney's possession and in the juvenile court records was not in the Commonwealth's Attorney's possession for purposes of revealing exculpatory evidence. Apparently, no specific ruling was made on this contention. The rest of the hearing record presents a confusing discussion that concerns the discoverability of the juveniles' statements and ignores the exculpatory evidence consideration. The Commonwealth did provide a copy of an exculpatory statement made earlier by respondent's wife after her direct testimony at trial. Respondent was convicted and sentenced to five years' imprisonment on the charge of criminal facilitation.

Respondent successfully pursued an appeal to the Court of Appeals. That court remanded the case to the trial court for a hearing to examine the juvenile records for any exculpatory matters, with directions to grant a new trial if such evidence is found. The Commonwealth petitioned this court for discretionary review; we granted review for further consideration of the issues involved.

A reading of the record and the briefs in this case reveals confusion by the parties of considerations apropos (1) discovery under the criminal rules and (2) those inherent in situations where due process demands disclosure of exculpatory evidence. Since the opinion of the Court of Appeals deals with the later due process consideration, our review is limited to such. Because the Court of Appeals too broadly interpreted the due process requirements of the United States Supreme Court cases and created a new and, in this case, unnecessary remedy, we reverse.

In urging reversal of the Court of Appeals, the Commonwealth presents three separate arguments. Since we reverse based upon the issue presented in the Commonwealth's second argument, an extended consideration of the other two arguments is not necessary. This second argument by the Commonwealth proposes that:

II. THE DUTY TO REVEAL EXCULPATORY EVIDENCE IS APPLICABLE ONLY UPON PROOF THAT THE GOVERNMENT SUPPRESSED SOMETHING.

Before considering the meritorious substantive arguments the Commonwealth presents on this issue, we must note our disapproval of the broad implications this argument presents. While it may be true that a defendant may obtain relief only upon "proof" that the government suppressed something, the duty on the state, mandated by the due process clause, to reveal exculpatory evidence is *always* applicable. This court, in recognizing the import

of the United States Supreme Court opinions in *Timmons v. Commonwealth*, Ky., 555 S.W.2d 234, 239 (1977), stated:

"No one questions that under principles expressed in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1966), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the withholding by the state of information which 'creates a reasonable doubt that would not otherwise exist' is a denial of due process, regardless of good faith on the part of the governmental authorities responsible for the suppression. . . ."

We do agree, however, that in light of the substantive consideration in the cases presented by the Commonwealth under this argument, the opinion of the Court of Appeals should be reversed. The Commonwealth in its brief correctly points out that *Brady v. Maryland*, supra, and its progeny all deal with the discovery after trial of exculpatory evidence in the hands of the state which was not revealed to the defense. Here, there has been no discovery of any exculpatory evidence and no serious suggestion that any exists. Given this, the materiality analysis laid out in *United States v. Agurs*, supra, and interpreted by this court in *Williams v. Commonwealth*, Ky., 569 S.W.2d 139 (1978), becomes impossible.

What the respondent advocates and what the Court of Appeals did in this case go well beyond the due process considerations inherent in these cases. In effect the Court of Appeals opinion broadens the due process requirement to reveal exculpatory evidence into a general discovery tool for the defense counsel who has not been diligent in trial preparation.

The colloquy of the hearing reveals a defense counsel who is attempting to obtain broad discovery through the office of the Commonwealth's Attorney. Left with nothing more than mere conjecture that some exculpatory evidence *may* exist, an appellate court is in no position to reverse in the defendant's favor.

While our decision thus turns on the argument and cases considered above, a final note on the Commonwealth's other two arguments is appropriate. In its first argument the Commonwealth vehemently contends that the offices of County and Commonwealth's Attorney are completely separate for all purposes and any exculpatory evidence in the hands of the County Attorney (e.g. a deal with the juveniles) cannot be imputed to the Commonwealth's Attorney for due process purposes. We are not at all convinced that this "left hand knoweth not what the right hand does" argument would be successful if a more concrete indication of exculpatory evidence requiring an *Agurs* analysis were presented. In such circumstances the United States Supreme Court's statement in *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), that "neither DiPaola's authority nor his failure to inform his superiors or his associates is controlling" would seem equally applicable to the County Attorney and the Commonwealth's Attorney, both of whom are a "spokesman for the Government."

With these appropriately brief words of caution, we finally consider in passing the Commonwealth's third argument that "no statutory duty exists to provide exculpatory evidence." Our initial comments in considering the Commonwealth's second argument are equally applicable here. The due process requirements mandated by the United States Supreme Court supersede any contradictory prohibitions in the criminal rules. Whether the timing of the disclosure of exculpatory evidence pursuant to the criminal rules comports with these requirements is not at issue here; therefore, we do not reach this issue.

The decision of the Court of Appeals is reversed, and the judgment of the Ohio Circuit Court is affirmed.

All concur.